Watson v City of New York (2018 NY Slip Op 00245)





Watson v City of New York


2018 NY Slip Op 00245


Decided on January 16, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 16, 2018

Friedman, J.P., Webber, Gesmer, Kern, Oing, JJ.


306472/10 4378N 4377

[*1] Joshua Watson, Plaintiff-Respondent,
v
The City of New York, et al., Defendants-Appellants.


Zachary W. Carter, Corporation Counsel, New York (Elina Druker of counsel), for appellants.
Rubert & Gross, P.C., New York (Soledad Rubert of counsel), for respondent.



Order, Supreme Court, Bronx County (Larry S. Schachner, J.), entered November 26, 2014 which, to the extent appealed from as limited by the briefs, granted plaintiff's motion to strike the City defendants' answer, and denied their motion for a protective order, and order, same Court and Justice, entered December 1, 2015, which, to the extent appealed from as limited by the briefs, denied defendant Frank Diaz's motion to vacate the default judgment against him and to compel acceptance of the second amended answer, and granted plaintiff's cross motion for monetary sanctions against defendants, modified, on the law, to grant Diaz's motion to vacate the default judgment and to compel acceptance of the second amended answer, and to deny plaintiff's cross motion for monetary sanctions, and otherwise affirmed, without costs.
In 2010, plaintiff commenced this action for false arrest and malicious prosecution against the City of New York, the police detective who arrested him, the District Attorney, an assistant district attorney of Bronx County (hereinafter referred to as the City defendants) and Frank Diaz (Diaz), the other arresting police detective. The City defendants interposed a timely answer but did not include Diaz.
On November 24, 2010, the motion court granted plaintiff's motion for a default judgment against Diaz for failing to file a timely answer as the City defendants' original answer and first amended answer did not include Diaz. On December 2, 2010, the City defendants served a second amended answer that included Diaz.
On appeal, Diaz raises a new argument not made below, that the default judgment against him is a nullity because his time to answer had not yet expired when the motion court granted the default judgment against him. Specifically, Diaz argues that the affidavit of service, which affirms that service was made on Diaz on September 29, 2010 pursuant to CPLR 308(2), was not filed until October 18, 2010, and that he had until November 29, 2010 to timely answer the complaint.
Although an argument not raised before the motion court ordinarily may not be asserted on appeal, where "a party does not allege new facts, but, rather, raises a legal argument which appeared upon the face of the record and which could not have been avoided...if brought to [his or her] attention at the proper juncture," such argument may be raised for the first time on appeal (Gerdowsky v Crain's N.Y. Bus., 188 AD2d 93, 97 [1st Dept 1993] [internal quotation marks omitted]). Where a party raises a legal argument for the first time on appeal, as long as the issue is determinative and the record on appeal is sufficient to permit review, this Court may consider the new argument (Vanship Holdings Ltd. v Energy Infrastructure Acquisition Corp., 65 AD3d 405, 408 [1st Dept 2009]; see also U.S. Bank N.A. v DLJ Mtge. Capital, Inc., 146 AD3d 603, 603 [1st Dept 2017] [declining to consider party's new theory, raised for the first time on appeal, which was "not a purely legal argument"]). Further, where a default judgment is entered prematurely because the time to answer has not expired, the judgment is a nullity and must be vacated (see Dunn v Burns, 42 AD3d 884, 886 [4th Dept 2007]).
CPLR 308(2) states that service thereunder is not complete until 10 days after the filing of the affidavit of service. CPLR 320 provides that when service is made pursuant to CPLR 308(2), the defendant has 30 days from the time service is complete to answer the complaint.
Here, Diaz's nullity argument may be considered by this Court as it is a purely legal argument and the record on appeal is sufficient to permit review. The record contains a copy of plaintiff's affidavit of service, which plainly states on the first line: "FILED Oct 18 2010 Bronx County Clerk." Thus, service upon Diaz was not complete until October 28, 2010, 10 days after the affidavit of service was filed. Diaz then had 30 days, exclusive of the two holidays during that period, to answer the complaint, i.e., November 29, 2010. The motion court's granting of plaintiff's motion for a default judgment on November 24, 2010 was premature as it was five days before Diaz's time to answer would have expired. Accordingly, the default judgment entered against Diaz should be vacated and plaintiff is directed to accept the City defendants' second amended answer.
We turn now to the more substantive issue of whether this Court should affirm the motion court's decision to strike the City defendants' answer. There is agreement that the City defendants' handling of the pretrial proceedings was deficient. Where we part company with the dissent is the proper sanction for such clear disregard of judicial proceedings and court orders. The dissent takes the position that a monetary sanction would be sufficient. We respectfully disagree.
Pursuant to CPLR 3126, "[i]f any party . . . refuses to obey an order for disclosure or wilfully fails to disclose information which the court finds ought to have been disclosed, pursuant to this article, the court may make such orders with regard to the failure or refusal as are just." This Court has long held that "the drastic remedy of striking a party's pleading pursuant to CPLR 3126 for failure to comply with a discovery order . . . is appropriate only where the moving party conclusively demonstrates that the non-disclosure was willful, contumacious or due to bad faith" (Henderson-Jones v City of New York, 87 AD3d 498, 504 [1st Dept 2011] [internal quotation marks omitted]). "Willful and contumacious behavior can be inferred by a failure to comply with court orders, in the absence of adequate excuses" (id.). Although actions should be resolved on the merits whenever possible, the efficient disposition of cases "is not promoted by permitting a party . . . to impose an undue burden on judicial resources to the detriment of . . . other litigants. Nor is the efficient disposition of the business before the courts advanced by undermining the authority of the trial court to supervise the parties who appear before it" (Arts4All, Ltd. v Hancock, 54 AD3d 286, 287 [1st Dept 2008], affd 12 NY3d 846 [2009], cert denied 559 US 905 [2010]). "[I]t generally is within the discretion of the motion court to determine the appropriate penalty to be imposed against an offending party" and "[i]t would not be appropriate . . . for this Court to substitute its discretion for that of the Justice sitting in the IAS Court" (Spira v Antoine, 191 AD2d 219, 219 [1st Dept 1993]).
Here, the motion court's finding that the City defendants' conduct was willful and contumacious is supported by the record and was a proper exercise of its discretion.
On May 10, 2011, the motion court issued the preliminary conference order, which required the City defendants to provide various documents within 60 days. However, the City defendants failed to respond or provide any records whatsoever notwithstanding the preliminary conference order.
Nearly a year later, on April 24, 2012, the motion court issued a second order requiring the City defendants to respond to the preliminary conference order and to produce "all documents held by the NYCPD" pertaining to this matter by June 1, 2012.
On June 11, 2012, over a year after they were initially directed to do so, the City defendants served responses to the preliminary conference order but redacted certain material they alleged was privileged and confidential, including personal identifying information such as phone numbers, addresses, dates of birth and social security numbers for a police officer, the victim and a witness. However, the City defendants failed to provide a privilege log which is required under the discovery rules.
In February 2013, plaintiff moved to compel the City defendants' compliance with the prior discovery orders. Based on the City defendants' substantial delay in complying with the [*2]preliminary conference order and their redaction of certain documents without providing a privilege log, on August 9, 2013, the motion court issued an order granting plaintiff's motion to compel and requiring the City defendants to disclose their entire file without redactions.
After that order was issued, the City defendants could have sought to appeal the order or sought a protective order based on the assertion that the order required them to produce privileged and confidential information. However, they did nothing at all to challenge the order and did not even timely respond to the order.
Four months after the August 9, 2013 order was issued, the City defendants still had not responded or provided plaintiff with the unredacted discovery. Thus, in December 2013, plaintiff moved to strike the City defendants' answer based on their failure to comply with multiple discovery orders.
It was not until July 3, 2014, the return date of plaintiff's motion to strike, that the City defendants finally served plaintiff with their very delayed discovery response, which still included redactions and a privilege log. Such response was provided over three years after the City defendants were initially ordered to produce the discovery and nearly a year after the court ordered them to produce the discovery with no redactions.
Additionally, at the same time, almost a year after the order was issued, the City defendants sought a protective order against the August 9, 2013 order arguing that the order required them to produce privileged and confidential information.
Based on such dilatory conduct and the City defendants' failure to comply with multiple court orders, forcing the plaintiff to make multiple motions seeking discovery which the City defendants were ordered to produce years prior, the motion court properly exercised its discretion in striking the City defendants' answer and this Court will not substitute its discretion for that of the motion court.
The dissent contends that striking of the City defendants' answer was not warranted because plaintiff was not prejudiced by defendants' dilatory conduct. However, prejudice is not the standard by which a court determines whether to strike the answer of a party. Rather, the standard is whether the conduct of the offending party is willful, contumacious and in bad faith. Thus, even if plaintiff has not established prejudice, such factor is not dispositive here.
The dissent also contends that the motion court abused its discretion in striking the City defendants' answer because the City defendants substantially complied with the discovery orders and that they acted in good faith in redacting privileged and confidential material. However, even if the August 9, 2013 order improperly ordered unredacted disclosure of privileged and confidential material and even if the motion court should have instead required an in camera inspection of the records to assess the redactions, the motion court still did not abuse its discretion in striking the City defendants' answer. The City defendants could have appealed from the August 9, 2013 order to the extent they believed that it was issued in error or they could have timely sought a protective order from the court prior to the deadline for providing discovery, but they failed to do so. Instead, they willfully and purposefully ignored the court's order on the ground that they disagreed with the scope of discovery the order required them to produce. However, the law does not leave it up to the litigants to decide which portions of a court order they will follow and which portions they will ignore. Moreover, the City defendants' very belated attempt to obtain a protective order, nearly a year after the order was issued, was improper as it was untimely.
Although the dissent suggests that the City defendants' dilatory behavior should be overlooked, it was within the discretion of the motion court to strike the City defendants' answer based on the fact that the City defendants disobeyed multiple court orders. Indeed, this Court has consistently upheld the striking of the City's answer under similar circumstances where the City disobeyed multiple court orders directing the production of discovery (see McHugh v City of New York, 150 AD3d 561, 561 [1st Dept 2017] ["(t)he City's . . . unexplained noncompliance with a series of court-ordered disclosure mandates over a period of nearly three years constituted willful and contumacious behavior, warranting the striking of (its) answer]; see also Elias v City of New York, 87 AD3d 513, 517 [1st Dept 2011] [holding that "the history of defendant's untimely, unresponsive and lax approach to complying with the court's previous orders warrants the [*3]striking of defendant's answer"]; see also Henderson-Jones v City of New York, 87 AD3d at 504 [concluding that the City's answer should have been stricken on the ground that striking the answer "serves the important function of deterring obstreperous litigation behavior" particularly where the City fails to comply with court-ordered deadlines]).
As this Court concludes that the motion court did not abuse its discretion in striking the City defendants' answer based on their defiance of multiple court orders, we do not address the merits of the City defendants' belated position that the August 9, 2013 order improperly required them to produce unredacted documents which would reveal information that should not be disclosed. We find, however, that an award of monetary sanctions is unwarranted.
All concur except Friedman, J.P. and Webber, J. who dissent in part in a memorandum by Friedman, J.P. as follows:




FRIEDMAN, J.P. (dissenting in part)


This is an action for malicious prosecution and false arrest, brought by a plaintiff who, although ultimately acquitted at trial, was indicted by a grand jury, based on eyewitness testimony, on a charge of attempted murder in the second degree. The majority today affirms an order striking the answer of the City of New York and the individual police and prosecutorial defendants as a sanction for their counsel's redaction from defendants' document production of personal, confidential and/or privileged information apparently devoid of relevance to the merits of plaintiff's claim. The redacted information included such sensitive material as police officers' personal cell phone numbers (in some cases, numbers that the officers shared with members of their families); nonparty witnesses' social security numbers, dates of birth, addresses and phone numbers; and attorney work product of the Bronx County District Attorney's office. The majority does not deny that this material should have been excluded from the disclosure process, had defendants taken timely steps to obtain such relief, and that no material prejudice to plaintiff has been caused by either the nondisclosure of this information or by defendants' delays in moving for protective relief.
While I acknowledge that the Corporation Counsel's handling of the defense of this matter was sufficiently flawed to warrant a substantial sanction (and I certainly do not believe that it should be "overlooked"), I cannot agree that these errors — which boil down to a failure to seek an obviously warranted protective order in timely fashion — can justify precluding defendants from presenting their potentially meritorious defense, especially given that plaintiff apparently had no right to the redacted information and, therefore, cannot claim to have been prejudiced by his failure to receive it. Certainly, individual police officers, nonparty witnesses and the victim of the underlying crime — the persons whose privacy and security would be placed at risk by the unrestricted disclosure of the subject information — should not be penalized personally for the deficiencies of the Corporation Counsel's defense of this matter.
To reiterate, I agree that the Corporation Counsel's defense of this matter was sufficiently deficient to warrant a substantial sanction, whether in the form of a fine or a preclusion order. Accordingly, I would affirm the $10,000 monetary sanction that Supreme Court imposed upon the City, and I dissent from the majority's unexplained reversal of the provident exercise of Supreme Court's discretion to impose such a measured penalty. I further dissent, for the reasons summarized above, and more fully explained below, from the majority's affirmance of the striking of the answer.[FN1]
Plaintiff was arrested on October 25, 2007, and on November 14, 2007, a grand jury [*4]indicted him on the charge of attempted murder in the second degree. At trial, a witness, who had also appeared before the grand jury, testified that he had been standing next to the victim when he saw a third man shoot the victim at point blank range. This witness identified plaintiff as the perpetrator of the crime. The trial resulted in a verdict of acquittal.
In 2010, plaintiff commenced this action for false arrest and malicious prosecution against the City of New York, two police detectives who had arrested him, the District Attorney and an assistant district attorney of Bronx County. The complaint alleged that, in spite of the eyewitness who testified against him, there was no probable cause for plaintiff's arrest or prosecution, purportedly because defendants had failed to "exercise . . . proper procedure and reasonable investigation."
The first discovery order in this action, a preliminary conference order dated May 10, 2011, ordered defendants to produce various documents within 60 days "to extent not privileged" (emphasis added). Defendants did not timely produce the specified documents, and on April 24, 2012, Supreme Court issued a second discovery order, ordering defendants to comply with the May 10, 2011 order by June 1, 2012. In response to the second discovery order, defendants produced 556 pages on June 11, 2012. Defendants' extensive production included complaint and arrest reports, the criminal court affidavit of the witness who testified against the plaintiff before the grand jury and during the criminal trial, and the grand jury indictment.
In compliance with the May 10, 2011 order, which expressly permitted redacting privileged information, defendants redacted privileged, confidential and irrelevant information on 257 pages. Although defendants did not produce a detailed privilege log at that time, each redaction was accompanied by a notation specifying the nature of the redacted information [FN2]. Defendants correctly assert that their June 11, 2012 production substantially satisfied their obligations under the May 10, 2011, and April 24, 2012 orders to produce relevant discovery "to extent not privileged."[FN3]
The record does not reflect that plaintiff moved under CPLR 3124 to compel disclosure before Supreme Court's next discovery order. Nevertheless, on January 4, 2013, after a compliance conference, Supreme Court issued a third discovery order that simply instructed both parties to comply with the previous two orders within 60 days.
The January 4, 2013 order did not include any guidance to defendants as to how their June 11, 2012 production had not complied with the court's previous orders. Further, the order failed to clarify whether any of the redactions were improper or violated proper procedures, nor did it clarify how defendants could remedy any potential errors.
Before the 60-day deadline set by the January 4, 2013 order had expired, on February 13, 2013, plaintiff moved under CPLR 3124 to compel unredacted disclosure of all of the documents defendants asserted were subject to privilege. Plaintiff's motion primarily argued that defendants' "bald assertions" of privilege were improper, and that defendants had failed to sufficiently demonstrate that the redacted information was subject to privilege. Plaintiff further argued that defendants had not complied with CPLR 3122's requirement to serve a notice specifying its objections within 20 days of receiving plaintiff's subpoena, had not moved for a protective order, and had noted the asserted privilege on each page containing redactions instead of providing a privilege log.[FN4]
In response to plaintiff's motion, defendants provided supplemental disclosure and argued that the redactions were necessary to protect privileged and confidential information, which in any event was largely irrelevant to plaintiff's claims that the City had lacked probable cause to arrest and prosecute plaintiff.
Given defendants' claim that their redactions were necessary to protect privileged and confidential information, it was incumbent upon Supreme Court, at a minimum, to conduct an in camera review before ordering defendants to produce the documents without redactions. Nevertheless, by order dated August 9, 2013 (the August 2013 order), Supreme Court granted plaintiff's motion to compel defendants to disclose the New York City Police Department's (NYPD) entire unredacted file of his case within 45 days. The court specifically directed that the documents to be produced "should not be redacted." The court did not allow for any exceptions [*5]to its prohibition of redactions, even for the identifying information of police officers, witnesses, or the victim. By way of explanation, the court stated: "The City has failed to move for a protective order, [has] not particularized the claimed privileges, or provided an affidavit from a representative of the Police Dept [sic] or District Attorney. The conclusory bald assertions of privilege [are] not sufficient to unilaterally redact documents."
On August 20, 2013, plaintiff served defendants with a copy of the August 2013 order and notice of entry thereof. Defendants never took an appeal from the August 2013 order. They also failed either to comply with the order or, on the other hand, to seek relief from it within the 45-day period it provided for compliance.
On December 2, 2013, approximately 3½ months after serving defendants with notice of entry of the August 2013 order, plaintiff moved for an order striking defendants' answer based on their failure to comply with the August 2013 order. In response to this motion, an assistant corporation counsel newly assigned to the case (the originally assigned assistant having resigned) sought to prepare a document production responsive to the August 2013 order and reached out to plaintiff's counsel in an attempt to resolve the pending motion. The assistant corporation counsel suggested that the parties enter into a stipulation allowing for redaction of only certain categories of information, specifically, (1) the personal and current cell phone numbers of currently employed police officers, (2) the social security numbers of nonparty witnesses, (3) information about the victim protected by the Health Insurance Portability and Accountability Act (HIPAA), and (4) material constituting the work product of the District Attorney's office. The assistant corporation counsel also suggested that the parties jointly request in camera review of the documents. Plaintiff's counsel rejected the proposal and stated that he would accept nothing less than the documents without any redactions.
On July 3, 2014, the date on which the parties appeared for oral argument of the motion to strike, defendants produced the documents called for by the August 2013 order. The July 3, 2014 production comprised 553 pages, with full or partial redactions of only 83 pages, as opposed to the 257 redacted pages of the June 11, 2012 production. In addition, defendants produced a detailed privilege log noting each redacted item and the asserted privilege. Defendants indicated that the redactions were of (1) personal and current cell phone numbers of current police officers, (2) social security numbers of nonparty witnesses, (3) HIPAA-protected material of the victim, and (4) work product of the District Attorney's office. Defendants also disclosed the criminal histories of nonparty witnesses, which had previously been redacted.
At or about the time of their July 3, 2014 document production, defendants moved for a protective order, and for modification of the August 2013 order to preclude disclosure of work product of the District Attorney's office. This motion was supported by an affidavit by an Assistant District Attorney averring that the redacted pages from the file of the District Attorney's office contained work product not subject to disclosure. Defendants also brought an unredacted copy of their document production to the oral argument and offered it to the court for in camera inspection.
For reasons not germane to the merits of this appeal, upon the parties' appearance on July 14, 2014, the motion was adjourned until July 31, 2014. Defense counsel thereafter made several attempts to contact plaintiff's counsel to discuss an amicable resolution of the pending motions. No substantive discussions resulted from these efforts. However, on July 25, 2014, plaintiff's newly substituted counsel cross-moved for sanctions on the ground that defendants' pending application for relief was frivolous. Defendants opposed the motion.
The parties again appeared before the court for oral argument on the pending applications on September 12, 2014. Defendants again brought an unredacted copy of their file and again requested an in camera inspection to determine whether the documents were subject to unredacted disclosure. The court declined to receive the documents for an in camera inspection, and took the motions on submission.[FN5]
By order entered November 26, 2014, Supreme Court granted plaintiff's motion to strike defendants' answer based on their lack of compliance with its discovery orders. Supreme Court held that defendants, by failing either to seek timely relief from the August 2013 order or to comply with that order by providing completely unredacted documents, had engaged in willful and contumacious conduct that supported imposing the extreme sanction of striking their answer. Supreme Court noted that defendants had missed numerous deadlines, opined that plaintiff had acted in "good faith" by allowing defendants additional time to comply with the order, and found that disclosing 553 pages, of which 83 pages contained redactions, did not constitute substantial compliance with the August 2013 order. Notably, Supreme Court did not address the merits of whether plaintiff was entitled to discover current police officer's cell phone numbers or witness's social security numbers. It is also curious that the court, while asserting that plaintiff had acted "in good faith" by extending discovery deadlines, did not address plaintiff's refusal to agree to stipulate to the redaction of only four categories of plainly privileged information.
After the court granted the motion to strike their answer, defendants moved for renewal or reargument and plaintiff cross-moved for sanctions. By order entered December 1, 2015, the court denied defendants' motion for renewal or reargument and granted plaintiff's cross motion for sanctions to the extent of ordering defendants to pay plaintiff's counsel $10,000.
Upon defendants' appeal from the orders striking their answer and imposing a monetary sanction, the majority affirms the striking of the answer but — without any substantive explanation — vacates the more proportionate penalty of a monetary sanction. Notably, the majority avoids taking a position on the question of whether the August 2013 order properly ordered the City to disclose privileged and confidential information, without first conducting an in camera review to ensure that the disclosure was appropriate. Rather, the majority — sweeping under the rug the sensitive nature of the information in question, and the threat to the public interest, and to particular individuals, that its disclosure would pose — states simply that it would affirm the striking of the answer "even if the August 9, 2013 order improperly ordered unredacted disclosure of privileged and confidential material and even if the motion court should have instead required an in camera inspection" (emphasis added). However tardy defense counsel was in raising the public interest concerns implicated by the disclosure that Supreme Court had ordered, I cannot join the majority in condoning the court's peremptory dismissal of those concerns once they had been brought to its attention.
Remarkably, even as it affirms the imposition of such a harsh penalty against defendants, apparently based largely on defendants' delays in responding to discovery demands and in moving for a protective order, the majority appears to concede that defendants' delayed discovery responses did not cause any substantial prejudice to plaintiff. Specifically, rather than identify any substantial prejudice to plaintiff from defense counsel's errors, the majority simply asserts that "prejudice is not the standard by which a court determines whether to strike the answer of a party." The majority ignores the fact that less drastic penalties than the striking of a pleading are available to sanction an error by counsel that causes no prejudice to the opposing party.
Initially, the majority misstates the proper standard of review on this appeal. When reviewing discovery orders or other discretionary determinations, while we of course generally defer to the trial court's exercise of its discretion, "the Appellate Division is vested with its own discretion and corresponding power to substitute its own discretion for that of the trial court, even in the absence of abuse" (Those Certain Underwriters at Lloyds, London v Occidental Gems, Inc., 11 NY3d 843, 845 [2008]; see also Andon v 302-304 Mott St. Assoc., 94 NY2d 740, 745 [2000]; Small v Lorillard Tobacco Co., 94 NY2d 43, 53-54 [1999] ["The Appellate Division, as a branch of Supreme Court, is vested with the same discretionary power and may exercise that power, even when there has been no abuse of discretion as a matter of law by the [*6]nisi prius court"])[FN6]. In my view, the trial court's exercise of its discretion to strike defendants' answer, based on their counsel's tardiness in taking steps to protect from disclosure material that plaintiff simply was not entitled to have, was (contrary to the majority's view) an abuse of discretion as a matter of law. But, at a minimum, the court's extreme action was, under the circumstances, an improvident exercise of discretion for which this Court should substitute its own discretion.[FN7]
It should also be borne in mind that the August 2013 order, defendants' disobedience of which appears to be the primary factor in the majority's affirmance of the striking of their answer, was clearly erroneous. Initially, and of utmost significance, regardless of whether or not Supreme Court was frustrated with defendants' lack of compliance with its previous orders, the court should not, without first having conducted an in camera review, have ordered defendants to produce the documents without redactions in the face of defendants' claim that the documents contained privileged and confidential information, including identifying information of police officers, the crime victim, and witnesses (see NAMA Holdings, LLC v Greenberg Traurig LLP, 133 AD3d 46, 60 [1st Dept 2015] ["we cannot affirm an order directing the production of more than 3,000 purportedly privileged communications without a single one of those communications having been reviewed"]; Espady v City of New York, 40 AD3d 475, 476-477 [1st Dept 2007] [Before ordering disclosure of materials affecting the anonymity of police informants "[a]t the very least, the motion court should have conducted an in camera hearing as to whether plaintiffs' interest in obtaining disclosure outweighs defendants' interest in preserving the confidentiality of this material"]; see also Schindler v City of New York, 134 AD3d 1013, 1014-1015 [2d Dept [*7]2015] ["Although the defendants failed to produce the subject IAB file in order to substantiate their claim that certain portions of that file are privileged and irrelevant, under the circumstances of this case, the Supreme Court improvidently exercised its discretion in directing the disclosure of the complete IAB file without first requiring its production and reviewing it, in camera, so that the defendants' assertions of privilege and irrelevance could be evaluated on the merits"]).
Second, regardless of any potential harm to innocent parties, defendants' failures to provide a privilege log and an affidavit from an individual with personal knowledge as part of their June 11, 2012 production, while not to be condoned, did not justify deeming defendants to have effected a blanket waiver of any and all privileges, particularly in light of defendants' efforts to note the asserted privilege on each page containing redactions. At a minimum, Supreme Court should have given defendants advance warning that failure to provide a privilege log and an affidavit with personal knowledge would constitute a blanket waiver of any and all privileges.
Third, as to defendants' failure to move for a protective order, under the 1994 amendments to CPLR 3122 (as previously discussed), defendants were entitled to serve a production redacting privileged information without first moving for a protective order. The burden was then on plaintiff to move to compel unredacted disclosure, as plaintiff did (see Pyron, 256 AD2d at 204-205).
Finally, as also previously mentioned, the City's failures to comply with CPLR 3122's requirement to serve a notice stating its objections within 20 days did not waive its right to redact privileged or otherwise palpably improper disclosure (see Lea v New York City Tr. Auth., 57 AD3d 269, 269 [1st Dept 2008] ["Concerning the demands that do remain in issue on appeal, they are all palpably improper . . . , and thus production thereof should not be compelled despite defendant's failure to timely object thereto"]; Holness, 220 AD2d at 721-722 [2d Dept 1995] ["The failure of a party to challenge the propriety of a notice for discovery and inspection pursuant to CPLR 3120 within the time prescribed by CPLR 3122 forecloses inquiry into the propriety of the information sought except with regard to material that is privileged pursuant to CPLR 3101 or requests that are palpably improper . . . plaintiff's first request for documents is palpably improper since it seeks information of a confidential and private nature that is not relevant to the issues in this case" (emphasis added)]).
In support of its finding that defendants' delays, and their lack of full compliance with the clearly erroneous August 2013 order, amount to conduct so willful and contumacious as to justify striking their answer, the majority cites to three of our precedents (McHugh v City of New York, 150 AD3d 561 [1st Dept 2017]; Elias v City of New York, 87 AD3d 513 [1st Dept 2011]; Henderson-Jones v City of New York, 87 AD3d 498 [1st Dept 2011]). While I agree that defense counsel's handling of this matter leaves much to be desired (particularly, the failures to respond to plaintiff's discovery demands and to seek an appropriate protective order in timely fashion), this case law simply does not support striking defendants' answer based on the deficiencies of their counsel's handling of discovery appearing from this record. To the contrary, a review of the relevant case law makes it plain that the conduct at issue here, even though deserving of a penalty, does not warrant the drastic sanction of the striking of their answer — in effect, granting plaintiff judgment as to liability without the trouble and inconvenience of having to prove a case.
With regard to the untimeliness of defendants' discovery responses, it is well established that mere delay in responding to discovery requests does not justify the extreme sanction of striking an answer. Applicable here is the following statement we made in an earlier case presenting a similar issue:
"Defendant's behavior in this matter cannot be excused. Their exhibited pattern of noncompliance and their failure to account for their actions over a period of a year and a half warrant a penalty pursuant to CLR 3126. . . . While the conduct of defendants here was unsupportable, we cannot find that it rose to the level that would justify striking the answer" (De Socio v 136 E. 56th St. Owners, Inc., 74 AD3d 606, 608 [1st Dept 2010]; see also Viruet v Mount Sinai Med. Ctr. Inc., 143 AD3d 558 [1st Dept 2016]; Banner v New York City Hous. Auth., 73 AD3d 502 [1st Dept 2010]).
Here, defendants' counsel was certainly remiss in failing to move in timely fashion for a protective order authorizing the redaction of the aforementioned sensitive or privileged material from production, and in tardily producing documents in response to the May 20, 2011 order and the August 2013 order. But, in view of the majority's inability to identify any prejudice to plaintiff resulting from these delays, and also in view of the problem created by plaintiff's counsel's refusal to reasonably accommodate the privacy and security concerns raised by plaintiff's discovery demands, the striking of defendants' answer — effectively granting plaintiff a default judgment in the absence of any indication that he could shoulder the burden of rebutting the presumption of probable cause arising from his indictment — is unjustified on this record.
Nor, under these circumstances, was defendants' redaction of 83 pages out of the 553-page production they made on July 3, 2014, so willful and contumacious as to justify striking their answer. The aforementioned three cases cited by the majority do not hold otherwise and are, in any event, readily distinguishable. In McHugh v City of New York, we held it was appropriate to strike the defendants' answer after the defendants violated five discovery orders ordering them to produce a witness for deposition, and upon finally producing a witness, produced an admittedly unprepared witness who was unable to provide any relevant testimony (150 AD3d at 562). Under even more extreme facts, in Elias v City of New York, we ordered the defendant's answer to be stricken after the defendant had previously been sanctioned by this Court for failure to comply with its discovery obligations, and had additionally failed to comply with nine of Supreme Court's orders (87 AD3d at 517). Finally, in Henderson-Jones v City of New York, we reversed Supreme Court and granted the plaintiff's motion to strike the defendants' answer based upon our finding that the "defendants failed to demonstrate that they even attempted to comply with their discovery obligations" merely to identify the police officers involved in the subject incident, and that their efforts were so "lacking in diligence that it is hard to characterize them as anything other than willfully designed to thwart plaintiff" (87 AD3d at 505).
Here, unlike the defendants in McHugh and Elias, who respectively violated five and nine discovery orders, defendants in this case were merely untimely on two occasions, neither of which prejudiced plaintiff. Unlike the defendants in Henderson-Jones, who did not even attempt to comply with their discovery obligations, defendants in this case went to considerable lengths to comply with the August 2013 order. Defendants produced 470 pages of unredacted documents, and for the 83 pages containing redactions, defendants provided a privilege log and specific written notations indicating the asserted privilege for each redaction. Further, defendants note that they twice brought the entire unredacted file to court and asked Supreme Court to conduct an in camera inspection. Additionally, defendants attempted on numerous occasions to negotiate a stipulation with plaintiff to redact only four narrow categories of information. Finally, defendants moved for a protective order — albeit, again, later than the motion should have been made.
Above all, McHugh, Elias or Henderson-Jones are inapposite because there is no indication that the defendants' answers were stricken in those cases based on failures to disclose privileged information, the disclosure of which would pose risks to private citizens, and which had no relevance to the merits of the action. Unlike the three cases relied upon by the majority, in this case the primary error of defendants' counsel was in being late to take steps to exclude privileged and sensitive information from the scope of the disclosure process, in which such information plainly did not belong. In particular, defendants' failure to disclose identifying information of police officers or private citizens, even if the court had — plainly, in error — directed such disclosure, cannot be characterized as "cavalier noncompliance" (Elias, 87 AD3d at 517) that warrants the striking of a pleading.
Finally, the majority is correct in pointing out that, once the concededly erroneous August 2013 order was issued, rather than simply fail to comply with it to the extent it was in error, defendants' counsel should have sought immediate judicial relief from it. Specifically, defendants should have moved for a protective order before the deadline for production set by the order and, given the interests at stake, they should also have filed an appeal and made an application for interim relief from this Court. Defense counsel plainly erred in unilaterally [*8]failing to comply fully with the August 2013 order, erroneous though it was, and I agree that defendants must be penalized for this error of their counsel. But I do not agree that, in determining the penalty, we must ignore the serious — and dangerous — error that tainted the August 2013 order in the first place, or the lack of prejudice to plaintiff from defendants' failure to produce irrelevant information to which he was not entitled. Under these particular circumstances, I believe that the penalty of striking defendants' answer — thereby granting plaintiff judgment as to liability when he has not proved his case — is far too drastic, and its imposition constitutes an abuse of discretion.
In sum, the relevant conduct of defendants' counsel, while undeniably deficient, does not constitute willful and contumacious conduct of the kind that would justify the striking of defendants' answer (see Viruet, 143 AD3d at 559; Banner, 73 AD3d at 503; Catarine v Beth Israel Med. Ctr.. 290 AD2d 213, 215-216 [1st Dept 2002]). Just as not every crime deserving of punishment warrants a life sentence, not every failing of counsel in litigation — not even every failing of counsel that deserves a substantial sanction — warrants the imposition of the ultimate penalty available to the court, namely, the direction of judgment against the client of the errant attorney. This drastic sanction is plainly disproportionate to the conduct at issue here, especially when one considers that the information withheld is irrelevant to the merits of the case and, if disclosed without restriction (as Supreme Court inexplicably demanded), would threaten the personal interests of police officers, their families, and other private citizens. The disproportion becomes even more glaring when one considers that plaintiff's counsel rejected out of hand a number of reasonable overtures by the Corporation Counsel to resolve this discovery dispute amicably. Moreover, the interests of the real party in interest in the defense of this matter — the taxpaying public of the City of New York — should not be disregarded in weighing the penalty to be imposed for the substantial — but ultimately nonprejudicial — procedural mistakes of their counsel.
For all of the foregoing reasons, I believe that we should modify the orders appealed from to reinstate defendants' answer — whether as a correction of an abuse of Supreme Court's discretion or as a substitution of this Court's own discretion for an improvident exercise of discretion by Supreme Court — and that we should affirm the imposition of the monetary sanction. To the extent the majority does otherwise, I dissent.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 16, 2018
CLERK



Footnotes

Footnote 1:I concur with the majority's modification to grant the motion to vacate the default judgment that was entered against one of the individual defendants. I note, however, that the majority's granting of this relief will apparently have little effect, given that the majority upholds the striking of the other defendants' answer.

Footnote 2:For example, the "complaint - follow up informational report" contained redactions blacking out the victim's and witnesses' addresses, dates of birth and cell phone numbers, along with a notation that stated "redacted personal identifying information of victim/witness."

Footnote 3:Under the 1994 amendment to CPLR 3122, defendants were not required to move for a protective order before redacting privileged information. "Pursuant to CPLR 3122, as amended effective January 1, 1994, it is the obligation of the party seeking disclosure to move to compel disclosure; no longer may the party who served a discovery notice rely upon the recipient's failure to seek a protective order within ten days, as was previously the case" (Pyron v Banque Francaise du Commerce Exterieur, 256 AD2d 204, 204-205 [1st Dept 1998]). As the practice commentary to CPLR 3122 explains: "Under the old rule, the burden of objecting to a discovery demand under CPLR 3120 or a demand for a physical or mental examination under CPLR 3121 was on the party receiving the demand, who had ten days in which to object to it by moving for a protective order. If the recipient failed to move for a protective order within this brief period, the objection was generally waived. Under the new rule, a procedure is prescribed whereby the recipient of the notice makes her objections to the serving party in a response' instead of to the court in a motion for a protective order. If the parties are then still at odds about their rights and obligations, it is the party who served the notice or subpoena who must bring the dispute to court. A motion to compel the discovery or examination under CPLR 3124 is the proper vehicle if the disclosure is sought from a party" (Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3122:1). Additionally, although under the new rule defendants had an obligation to serve a notice on plaintiff stating their objections within 20 days of receipt of plaintiff's discovery demand, defendants' failure to serve the required notice did not bar their redacting privileged and confidential information (see Holness v Chrysler Corp., 220 AD2d 721, 721-722 [2d Dept 1995]).

Footnote 4:As explained in the previous footnote, defendants' failure to file the required notice within 20 days may have waived certain objections but did not waive their right to redact privileged or palpably improper disclosure. The caselaw cited by plaintiff in the affidavit accompanying his motion does not hold otherwise (see Anonymous v High School for Envtl. Studies, 32 AD3d 353, 358-359 [1st Dept 2006] ["Initially, we note that defendants failed to object to the March 24, 2004 document demand within the 20 days set forth in CPLR 3122(a). Such failure to object to the demand generally limits our review to the question of privilege under CPLR 3101(b)"]). Further, as also explained in the previous footnote, defendants did not have a burden to move for a protective order before redacting privileged information.

Footnote 5:In its order entered November 26, 2014, the court wrote that "the City has yet to provide unredacted copies of the documents even for the court's review." Upon the subsequent motion to renew or reargue, however, defendants contended, and plaintiff did not dispute, that this statement by the court was inaccurate.

Footnote 6:In Spira v Antoine (191 AD2d 219, 219 [1st Dept 1993]), we stated that, in resolving a discovery dispute, "it generally is within the discretion of the motion court to determine the appropriate penalty to be imposed against an offending party. It would not be appropriate, at bar, for this Court to substitute its discretion for that of the Justice sitting in the IAS Court" (id. [internal citations omitted and emphasis added]). The majority, in quoting the foregoing language, uses an ellipsis to replace the italicized words "at bar," leaving the misleading impression that Spira stands for the erroneous proposition that this Court does not have the power to substitute its own discretion for that of the trial court. The phrase "at bar," which the majority conveniently chooses to omit from its quotation, indicates that Spira stands for no such general proposition, but merely determined that, in the particular case presented, it would not be appropriate to disturb the trial court's exercise of its discretion.

Footnote 7:At the same time it affirms the disproportionate penalty of the striking of the answer, the majority sets aside the proportionate penalty of a monetary sanction, with no justification offered beyond the conclusory assertion that the fine was "unwarranted." The majority does not explain how a $10,000 monetary sanction could have been "unwarranted" by the same conduct that the majority finds to have warranted the far more drastic penalty of the striking of the answer. Further, the expansive view the majority takes, in discussing the striking of the answer, of the deference owed to Supreme Court, contrasts jarringly with the majority's peremptory reversal of a monetary penalty that, in any other case presenting similar deficiencies of counsel, would have been held to have been well within Supreme Court's discretion.